UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THE MIDWEST DISABILITY INITIATIVE and MICHAEL RAY MARCHAND, | Case No. 16-CV-1890 (PJS/KMM) |
| Plaintiffs, | ORDER |
| v. | |
| NELMATT, LLC, | |
| Defendant. | |

Patrick W. Michenfelder, THRONDSET MICHENFELDER, LLC, for plaintiffs.

Kenneth J. Smith and Robert P. Laue, CHRISTENSEN & LAUE, P.A., for defendant.

Plaintiffs Michael Marchand and the Midwest Disability Initiative (collectively "Marchand") brought this action against defendant Nelmatt, LLC ("Nelmatt"), the owner of the real property on which Matt's Bar and Grill ("Matt's Bar") is located. Marchand alleged (among other things) that Matt's Bar was not in compliance with the accessibility requirements of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. After Nelmatt failed to appear, the Court granted Marchand's motion for a default judgment and ordered Nelmatt "to make the alterations or modifications necessary to ensure that . . . the premises of 'Matt's Bar' . . . are fully in compliance with the accessibility requirements of Title III of [the ADA] and its implementing regulations[.]" ECF No. 26 at 1-2.

This matter is before the Court on Marchand's motion for an award of attorney's fees under 42 U.S.C. § 12205. ECF No. 29.[1] Marchand seeks attorney's fees in the amount of $11,220.00.[2] ECF No. 30 at 5. Nelmatt appeared in this action after judgment was entered for the purpose of opposing Marchand's request for attorney's fees. ECF No. 36. Nelmatt argues that Marchand is not entitled to recover any attorney's fees and, even if he is, that the amount of fees he is seeking is unreasonable. After reviewing the materials submitted by the parties, the Court agrees with Marchand that he is entitled to

---

[1]Marchand died after judgment was entered against Nelmatt and while his motion for attorney's fees was pending. ECF No. 35. Marchand's death does not render his claim for attorney's fees moot, however. *See Libertarian Party of Ark. v. Martin*, 876 F.3d 948, 952 (8th Cir. 2017) ("When a case has been rendered moot, 'a "prevailing party" is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties *prior* to the intervening act of mootness.'" (quoting *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 453 (1st Cir. 2009)); *Diffenderfer*, 587 F.3d at 454 ("When plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorney's fees for the district court litigation.").

Marchand's counsel asserts that "[u]nder Minn. Stat. § 573.01 (Survival of Causes) Mr. Marchand's claims survive to the personal representative of Mr. Marchand's estate." ECF No. 35. But whether a claim under the ADA survives "is a question of federal law," not Minnesota law. *Guenther v. Griffin Constr. Co.*, 846 F.3d 979, 982 (8th Cir. 2017). Fortunately for Marchand's counsel, Marchand's claim for attorney's fees appears to survive Marchand's death under federal law. *See id.* at 986 ("We join other courts that have allowed the individual's estate to bring and maintain a suit for compensatory damages under the ADA in place of the aggrieved party."); *Flaum v. Gloucester Lanes, Inc.*, No. 4:13CV131, 2015 WL 364603, at *1-2 (E.D. Va. Jan. 27, 2015) (finding that a claim for attorney's fees by a plaintiff who successfully prosecuted a claim under Title III of the ADA survived the plaintiff's death).

[2]Marchand is not seeking to recover filing or service fees or any other costs.

recover attorney's fees, agrees with Nelmatt that the amount that Marchand requested is unreasonable, and finds that Marchand is entitled to recover $6,750.

## I.  PREVAILING PARTY

Under the ADA, "the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses[.]"  42 U.S.C. § 12205.  Nelmatt contends that Marchand was not a "prevailing party" because the Court merely entered a default judgment in his favor.  *See* ECF No. 36 at 2-3 (arguing that "[p]laintiff[s] did not secure a judgment on the merits" or prevail on their claims because Nelmatt "already had an obligation to be in compliance with . . the ADA" and the Court "d[id] not state that [Nelmatt] is not in compliance").

The Court disagrees.  The Supreme Court has instructed that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue . . . which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).  Given this "generous formulation," *id.*, Marchand easily qualifies as a "prevailing party."

According to the facts pleaded in Marchand's amended complaint—facts that must be treated as true because of Nelmatt's default, *see Martinizing Int'l, LLC v. BC Cleaners, LLC*, 855 F.3d 847, 850 (8th Cir. 2017)—Matt's Bar was not in compliance with

the ADA. ECF No. 10. Marchand obtained from the Court a judgment ordering Nelmatt to bring Matt's Bar into compliance. That judgment was indeed on the merits. *See, e.g., Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973) ("A judgment by default is as conclusive an adjudication of the issues for purposes of res judicata as a judgment rendered after a trial on the merits. The allegations of the complaint, in effect, become findings of fact." (citations omitted)). And "that enforceable judgment[] on the merits . . . create[d] the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (quoting *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)).

Prior to entry of the injunction, Marchand and others like him could not patronize Matt's Bar because of its violations of the ADA; after Matt's Bar was enjoined to comply with the ADA, Marchand and others like him could patronize the bar. ECF No. 10 at ¶¶ 3, 34, 40-44. Marchand was clearly a "prevailing party" for purposes of § 12205, and thus he is entitled to recover reasonable attorney's fees.

II. REASONABLE ATTORNEY'S FEES

The starting point for calculating a reasonable fee award is the lodestar—the number of hours reasonably expended multiplied by a reasonable hourly rate. *See Pennsylvania. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). In

-4-

calculating fee awards, judges in this District have also occasionally cited 12 factors identified by the Supreme Court in a footnote in *Hensley*.³ But *Hensley* did not hold that district courts *must* consider those 12 factors. And subsequent to *Hensley*, the Supreme Court has criticized the 12-factor test for giving "very little actual guidance to district courts," "plac[ing] unlimited discretion in trial judges," and "produc[ing] disparate results." *Id.* at 563.

In *Perdue*, the Supreme Court again noted the flaws of the 12-factor test and explained:

> An alternative, the lodestar approach, was pioneered by the Third Circuit in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (1973), appeal after remand, 540 F.2d 102 (1976), and "achieved dominance in the federal courts" after our decision in *Hensley*. *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002). "Since that time, '[t]he "lodestar" figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.'" *Ibid.* (quoting *Dague, supra*, at 562).
>
> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our

---

³"The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

> understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Developed after the practice of hourly billing had become widespread, *see Gisbrecht*, *supra*, at 801, the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable . . .; and unlike the [12-factor] approach, the lodestar calculation is "objective," *Hensley*, *supra*, at 433, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010).

As instructed by the Supreme Court, then, this Court will apply the lodestar method in assessing the reasonableness of Marchand's fee request.

*A. Hourly Rate*

Marchand is represented by Patrick Michenfelder, an attorney who has represented plaintiffs in numerous ADA-compliance actions. Michenfelder Decl., ECF No. 31 ¶ 6. Marchand requests that Michenfelder be compensated at the rate of $425 per hour. ECF No. 30 at 6.

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) (citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982) (en banc)). "[D]istrict courts may rely on their own experience and knowledge of

prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (citing *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2004)). A district court has "broad discretion" in awarding attorney's fees. *Id.*

Marchand bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *McDonald v. Armontrout*, 860 F.2d 1456, 1458-59 (8th Cir. 1988). In support of his fee request, however, Marchand submits only a declaration from Michenfelder himself, who opines that his hourly rate is reasonable. Michenfelder Decl. ¶ 11. Marchand also cites three orders issued by judges of this District (discussed below). ECF No. 30 at 6.

To assess the reasonableness of Michenfelder's hourly rate, some context is necessary. This case is one of dozens of cases filed in this District in the past few years in which a disabled person sues a commercial establishment—frequently a bar, restaurant, or convenience store—and alleges that the establishment has violated the accessibility requirements of Title III of the ADA. There is an assembly-line quality to these lawsuits: The plaintiff shows up at an establishment (sometimes having been driven there by an agent of the attorney), the plaintiff looks for a violation of the accessibility requirements (such as a parking spot that has been reserved for persons

with disabilities but that has been improperly configured or marked), the plaintiff (or the attorney's agent) reports any violation to the attorney, and the attorney files a lawsuit using a cookie-cutter complaint. In the vast majority of these cases, there is no real dispute that the establishment had failed to comply with an accessibility requirement. And the vast majority of these cases terminate in one of two ways: (1) the parties settle before the establishment has to incur substantial defense costs or (2) the establishment quickly corrects the problem and moves to dismiss the plaintiff's ADA claim as moot. *See Davis v. Queen Nelly, LLC*, No. 16-CV-2553 (PJS/SER), 2016 WL 5868066, at *1 (D. Minn. Oct. 6, 2016) ("A plaintiff may recover only injunctive relief—and not damages—under Title III of the ADA.").

This case is unusual only in that it terminated in a default judgment. Nelmatt received *legal* notice of this lawsuit after being served through the Minnesota Secretary of State. ECF No. 12. But because Nelmatt had failed to inform the Secretary of State of an address change, Nelmatt did not receive *actual* notice of this lawsuit until after judgment was entered against it. ECF No. 36 at 4. In short, this lawsuit was an unusually rote lawsuit in an unusually rote series of lawsuits. Almost everything that Michenfelder did on behalf of Marchand could have been done by a legal assistant.

The Court is not aware of any order in which a judge of this District has discussed the reasonableness of the hourly rates charged by attorneys who bring these

cookie-cutter ADA-compliance actions. (No such order has been cited by either party.) In the Court's view, however, a fair comparator to these ADA-compliance actions are actions under the Fair Debt Collection Practices Act ("FDCPA").[4] In the majority of FDCPA actions filed in this District, a plaintiff notifies an attorney of a technical violation of federal law by a debt collector, the attorney files suit using a cookie-cutter complaint, there is no real dispute about the facts or the law, and the case settles before the debt collector incurs substantial defense costs. In the past couple of years, judges of this District presiding over FDCPA cases have approved hourly rates for successful plaintiffs' attorneys ranging from $200 to $350. *See, e.g.*, *Meidal v. Messerli & Kramer, P.A.*, No. 18-CV-0985 (PAM/BRT), 2018 WL 4489693, at *2 (D. Minn. Sept. 19, 2018) ($300 per hour); *Goetze v. CRA Collections, Inc.*, No. 15-CV-3169 (MJD/FLN), 2017 WL 5891693, at *4 (D. Minn. Nov. 28, 2017) ($220); *Kuntz v. Messerli & Kramer P.A.*, No. 16-CV-2676 (JNE/BRT), 2017 WL 3332222, at *3 (D. Minn. Aug. 4, 2017) ($350); *Iverson v. Greystone All., LLC*, No. 14-CV-1027 (ADM/HB), 2015 WL 4635840, at *3 (D. Minn. Aug. 4, 2015) ($250 and $300).

---

[4]The Court does not believe that typical civil-rights actions—such as employment-discrimination actions brought under the ADA or excessive-force actions brought under 42 U.S.C. § 1983—are useful comparators. Those cases are not cookie-cutter lawsuits that arise out of technical, undisputed legal violations. Instead, those cases typically involve complex and vigorously disputed facts, and there is nothing rote about the way that good plaintiffs' attorneys investigate and prosecute those cases.

Looking beyond FDCPA cases and more generally to cases that have terminated in default judgments, the Court has had difficulty finding cases in which judges of this District have approved hourly rates exceeding $400, no matter how complex the case. *See, e.g.*, *Finnegan v. SunTrust Mortg., Inc.*, No. 15-CV-0204 (SRN/SER), 2018 WL 1470170 (D. Minn. Mar. 26, 2018) (approving hourly rates ranging from $235 to $285 in a complex breach-of-contract, fraud, and negligent-misrepresentation case resulting in default judgment, in which attorneys had billed over 850 hours); *Utecht v. Diamond Lake, Inc.*, No. 16-CV-0118 (JRT/FLN), 2017 WL 6734178 (D. Minn. Dec. 29, 2017) (approving hourly rates ranging from $185 to $385 in an ERISA case that progressed to summary judgment after the plaintiff's motion for default judgment prompted the defendant's answer); *Marquette Bus. Credit, Inc. v. Gleason*, No. 14-CV-0354 (MJD/LIB), 2015 WL 5836323 (D. Minn. Oct. 6, 2015) (approving hourly rates ranging from $325 to $360 in a three-year breach-of-contract case resulting in a default judgment).

The three cases cited by Marchand do not persuade the Court that Michenfelder's billing rate is reasonable. In *Novus Franchising, Inc. v. AZ Glassworks, LLC,* the Court did not identify the hourly rate of any of the plaintiff's attorneys, but the Court did remark on the unusual complexity of the case and the need for the attorneys to seek a preliminary injunction (as well as a default judgment). No. 12-CV-1771 (MJD/TNL), 2013 WL 1110838, at *9 (D. Minn. Mar. 18, 2013). In *Pinnacle Credit Services,*

*LLC v. APM Financial Solutions, LLC*, the Court also did not identify the hourly rate of any of the plaintiff's attorneys, and the Court's description of the case makes clear that it was more complex (procedurally and substantively) than this case. No. 15-CV-2917 (PAM/KMM), 2017 WL 3835189, at *4 (D. Minn. Aug. 31, 2017). And in *R & D Financial Solutions, Inc. v. Western Thrift & Loan Corp.*, the Court found "$260 to be a reasonable hourly rate." No. 07-CV-4306 (DSD/JJG), 2011 WL 692816, at *10 (D. Minn. Feb. 18, 2011).

In light of these authorities, and in light of the Court's own knowledge of the prevailing rates in the Twin Cities legal market, the Court finds that the $425 hourly rate requested by Marchand is not reasonable for Michenfelder's work in this particular case. The Court instead finds that $300 is a reasonable hourly rate.

### B. Number of Hours Reasonably Expended

Marchand seeks compensation for a total of 26.4 hours worked by Michenfelder. ECF No. 30 at 5; Michenfelder Decl. ¶ 11 & Ex. A. Nelmatt objects that many of the tasks performed by Michenfelder were necessitated by Marchand's failure to prosecute the case diligently—a failure that required multiple interventions by Magistrate Judge Katherine Menendez. ECF No. 36 at 4-7. The Court agrees that Nelmatt should not have to pay fees that were incurred because Marchand did not diligently prosecute this lawsuit.

1. Correspondence with the Court

   a. October 3 and 13, 2016

Marchand filed his complaint on June 7, 2016. ECF No. 1. On September 30, 2016, Judge Menendez issued an order to show cause why the complaint should not be dismissed, given that Marchand had failed to serve Nelmatt with the summons and complaint within the 90-day time period allowed by the Federal Rules of Civil Procedure. ECF No. 6. Michenfelder spent .20 hours reviewing that order on October 3, 2016, and .20 hours drafting a response on October 13, 2016. Michenfelder Decl. Ex. A. That response indicated that Marchand had been trying to effect personal service since June 8, 2016, and requested an additional 30 days to accomplish the task. ECF No. 7. In light of Marchand's failure to alert the Court of his unsuccessful efforts before the 90-day period had passed, the Court will reduce the adjusted lodestar by $120 (.40 hours at $300 per hour).

   b. December 14 and 28, 2016

After Marchand failed to serve Nelmatt within the extra 30 days that he had requested, Judge Menendez issued a second order on December 14, 2016, requiring that Marchand provide the Court with an update within 14 days. ECF No. 8. The same day, Michenfelder spent .20 hours reviewing the order. Michenfelder Decl. Ex. A. Two weeks later, on December 28, 2016, Michenfelder spent .20 hours informing the Court

that he had finally located an address for Nelmatt and asking to be given until January 9, 2017, to effectuate service. *Id.*; ECF No. 9. Again, because of Marchand's failure to alert the Court of his unsuccessful efforts prior to the Court's sua sponte order, the Court will reduce the adjusted lodestar by $120 (.40 hours at $300 per hour).

### c. December 27, 2016

On December 27, 2016, Michenfelder spent .40 hours amending the complaint to remove an unnecessary defendant. Michenfelder Decl. Ex. A; ECF No. 10. Marchand did not specifically respond to Nelmatt's contention that this amount of time was unnecessary, but based on Michenfelder's comments at the hearing on Marchand's motion for a default judgment, the Court is persuaded that this work was reasonable. Marchand had understandable difficulty identifying the owner of Matt's Bar, and it was not unreasonable for Michenfelder to spend less than 30 minutes amending the complaint to remove a defendant against whom Marchand had no viable claim.

### d. February 28 and March 29, 2017

After Nelmatt had been properly served with the summons and amended complaint and failed to respond, Judge Menendez issued an order on February 27, 2017, instructing Marchand to take certain steps within 30 days to perfect service and move the litigation forward. ECF No. 13. The next day, Michenfelder spent .20 hours reviewing the order. Michenfelder Decl. Ex. A. Then, on March 29, 2017, Michenfelder

spent .20 hours responding to the Court via email. *Id.*; *see also* ECF No. 14. Because, at almost every turn, Judge Menendez was required to goad Marchand into action, the Court will reduce the adjusted lodestar by $120 (.40 hours at $300 per hour).

### e. February 28, 2018

On March 30, 2017, Judge Menendez decided not to recommend dismissing the case for lack of prosecution but instead instructed Marchand to move for entry of default. ECF No. 14. Although Marchand applied for entry of default, ECF No. 15, he took no other steps to move the case forward; in particular, he failed to move for a default judgment. Judge Menendez was therefore forced to issue yet another show-cause order on February 22, 2018. ECF No. 18. Michenfelder spent .20 hours reviewing that order on February 28, 2018. Michenfelder Decl. Ex. A. Again, Nelmatt should not be forced to pay for Marchand's lack of diligence in prosecuting this case, so the Court will reduce the adjusted lodestar by $60 (.20 hours at $300 per hour).

### f. Summary

For the reasons described above, the Court reduces the adjusted lodestar by $420 (1.4 hours at $300 per hour) to account for tasks that were necessitated by Marchand's failure to diligently prosecute this lawsuit.

### 2. Motion for Default Judgment

Nelmatt also objects to the 6.3 hours that Michenfelder spent on April 2, 3, and 19, 2018, preparing papers related to the motion for entry of a default judgment and preparing for oral argument on that motion. ECF No. 36 at 5-6. The Court does not regard the amount of time that Michenfelder spent on these tasks as unreasonable.

### 3. Motion for Attorney's Fees

Finally, Nelmatt objects to the 6.5 hours that Michenfelder spent on May 2, 3, and 4, 2018, preparing Marchand's motion for attorney's fees. ECF No. 36 at 6. The objection is well taken; the Court has difficulty understanding why it would take Michenfelder longer to prepare a routine fee request than it took him to draft the papers related to the default-judgment motion and prepare for oral argument on that motion. The Court will compensate Michenfelder for four hours and reduce the adjusted lodestar by $750 (2.50 hours at $300 per hour).

### C. *Further Adjustments to the Lodestar*

Nelmatt urges the Court to depart from the lodestar based on the presence of "special circumstances." ECF No. 36 at 3 (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)). Nelmatt contends that this case has taken over two years to resolve because of Michenfelder's lack of diligence, and that many of Marchand's difficulties in service could have been avoided if a process server had simply gone to

Matt's Bar and handed papers to the manager. These circumstances are not "special," however. Marchand had the right to serve Nelmatt through the Secretary of State; Nelmatt did not get actual notice of this lawsuit because of its own failure to provide a current address to the Secretary of State.

\* \* \*

For these reasons, the Court awards Marchand a total of $6,750 in attorney's fees, which represents 22.5 hours of work at the rate of $300 per hour.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion for an award of attorney's fees under 42 U.S.C. § 12205 [ECF No. 29] is GRANTED IN PART AND DENIED IN PART.

2. Plaintiffs are awarded $6,750 in attorney's fees.

Dated: September 26, 2018            /sPatrick J. Schiltz
                                     Patrick J. Schiltz
                                     United States District Judge